William M. Rathbone  (SBN: 95864)
Daniel C. Silva  (SBN: 264632)
GORDON & REES LLP
101 W. Broadway
Suite 2000
San Diego, CA  92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124

[Proposed] Attorneys for Debtor
JCK Hotels, LLC,
a Delaware limited liability company

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JCK HOTELS, LLC, a Delaware liability company,<br><br>Debtor. | CASE NO.  11-09428<br><br>Chapter 11<br><br>**DEBTOR'S <u>EMERGENCY</u> MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL**<br><br>Time:<br>Date:<br>Court: 2<br>Judge: Hon. Louise DeCarl Adler |

JCK Hotel, LLC, a Delaware limited liability company ("Debtor"), the debtor and debtor-in-possession, hereby moves this Court, <u>on an emergency basis</u>, for an order granting the following relief:

A)   Authorizing Debtor to use any and all "cash collateral," as that term is defined in 11 U.S.C. § 363(a), now on hand and hereafter;

B)   Finding that the interests of Pacific Western Bank and LBUBS 2005-C2 Mira Mesa Limited Partnership in Debtor's cash collateral are adequately protected;

C)   Granting PWB and LBUBS a replacement lien in Debtors' post-petition cash and accounts receivable and the proceeds thereof, to the same extent, validity, and priority as any lien held by each PWB and LBUBS as of the petition date; and

D)   For such further relief as the Court deems just and proper.

This Cash Collateral Motion is based on the declaration of Charles Jung, the points and authorities discussed herein, the filings on file with the Court, the arguments made at any hearing on this motion, and on such other evidence as the Court deems proper and relevant.

Dated: June 6 2011                             GORDON & REES LLP


                                               By:    */s/ William M. Rathbone*
                                                      William M. Rathbone
                                                      Daniel C. Silva
                                                      [Proposed] Attorneys for Debtor
                                                      JCK HOTELS, LLC,
                                                      a Delaware limited liability company

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    SUMMARY OF MOTION AND NEED FOR EMERGENCY RELIEF**

Debtor is a Delaware limited liability company that operates the Holiday Inn Express Mira Mesa Hotel (the "Holiday Inn Express") and the Comfort Suites Mira Mesa Hotel (the "Comfort Suites"), located at 9880 and 9888 Mira Mesa Blvd., San Diego, CA 92131 (the "Hotels").  The Hotels are operated by Debtor under licensing and franchise agreements with Holiday Inn Express and Comfort Suites (the "Franchise Agreements").  Since 2008, and pursuant to the Franchise Agreements governing Debtor's use of certain intellectual property and operation of the Hotels, Debtor has renovated and undertaken substantial upgrade projects at the Hotels as required by a "Property Improvement Plan."  Since commencement of the renovations called for in the Property Improvement Plan on the Hotels, Debtor has expended approximately one and a half million dollars to remain in compliance with the Franchise Agreements.

The Debtor commenced this Chapter 11 Case by filing a Voluntary Petition on June 3, 2011 ("Petition Date").  Since the filing of the Chapter 11 case, Debtor continues to operate its business and manage its operations as Debtor in Possession.  Debtor must be authorized to continue to use revenue and other cash collateral to pay its ordinary and necessary expenses, pay its employees and pay its operational expenses as outlined on the budget attached to the Declaration of Charles Jung.  Cash is critical and any disruption to Debtor's use of cash collateral may inhibit its ability to complete the renovations and could potentially result in the termination of the Franchise Agreements, which would negatively impact Debtor's ability to reorganize.

This "Cash Collateral Motion" is filed on an emergency basis due to the nature of Debtor's business and its immediate critical need for cash.  The Hotels are required by the terms of the Franchise Agreements to provide Debtor's guests with a high level of service during their stay.  Failure to provide this level of service on a continuous basis will result in irreparable reputational damage, lower occupancy levels, revenues, and asset values, and imperil the effectiveness of the Franchise Agreements, the viability of the Property Improvement Plan, and

the ability for Debtor's effective reorganization. Thus, Debtor requests the immediate use of all cash or cash equivalents on hand or hereafter generated to pay the expenses outlined above.

## II. FACTS

The Holiday Inn Express renovations under the terms of the Property Improvement Plan are nearly 95% complete, requiring only the completion of administrative issues and payment of the balance for certain fees and goods. The Comfort Suites renovation is approximately 50% complete, with 71 of the 132 units completely renovated in accordance with the Property Improvement Plan. The remainder of the units are scheduled to be renovated by summer of 2012. Debtor anticipates that renovations of 30 more units at the Comfort Suites will require payments of approximately $130,000 out of cash collateral. Debtor estimates that another $320,000 will be necessary to complete all renovations.

Debtor's ability to reorganize would be substantially affected in the event Debtor was not able to complete the renovations required by the Property Improvement Plan, as it would be in violation of the Franchise Agreements.

While trying to comply with the Franchise Agreements and the Property Improvement Plan, Debtor defaulted on a mortgage purportedly owned by LBUBS 2005-C2 Mira Mesa Limited Partnership ("LBUBS"). LBUBS commenced foreclosure proceeding on the Hotels, and scheduled a foreclosure sale thereof for June 6, 2011. Debtor filed its Chapter 11 petition on June 3, 2011 (the "Petition Date") to prevent the completion of the foreclosure sale.

### A. Debtor's Operating Data

Debtor's primary banking relationship is with Pacific Western Bank ("PWB"). Debtor's relationship with PWB includes checking, banking, and loans. The budget attached to the Jung declaration as Exhibit "A" (the "Budget") projects Debtor's cash needs over the next six months. This projection was developed by Debtor's management based on current and historical operating data and management's best estimate of future cash needs. The operating results detailed in the Budget establish that Debtor anticipates generating net income for the year 2011. Accordingly, PWB and LBUBS, as the "Secured Creditors," will not see their cash collateral

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

pool depleted through Debtor's continued operations and they will be provided adequate protection payments of interest only payments commencing in July 2011.

Debtor must immediately and continuously utilize all cash proceeds in order to pay employees, suppliers, service suppliers and other ordinary course payments outlined above. Subsequently, the Debtor will seek approval from the Court for authority to complete the renovations of the Hotels as required by the Property Improvement Plan, and to stay in compliance with the Franchise Agreements through the use of cash collateral. The Franchise Agreements are essential for Debtor's reorganization, because, without the Franchise Agreements in place, Debtor will not be able to maintain the adequate advertising, networking, and licensing advantages that are associated with the use of "Holiday Inn Express" and "Comfort Suites."

Debtor's income has improved substantially over the past six months as a result of the renovations. As these renovations have been completed there has been less disruption in the services provided at each of the Hotels. Debtor projects that the income generated currently by the Hotels will continue to grow over the next calendar year as operations normalize, and renovations are completed. The investment of over $1.5 million in the Hotels will also permit Debtor to charge higher rooms rates due to the upgrades in the appearance and quality of the Hotels.

### B. Debtor's Debt Structure

As of the Petition Date, the Debtor owed approximately $13 million to LBUBS (the LBUBS Debt"). The LBUBS Debt is secured by senior liens pursuant to a deed of trust recorded against Debtor's real property, including the Hotels, as well as multiple UCC-1 financing statements and assignment purportedly filed against substantially all of Debtor's assets. Debtor also has two separate business loans totaling approximately $750,000 with PWB (the "PWB Debt," collectively with the LBUBS Debt, the "Secured Debts"). On information and belief, the PWB Debt is secured by liens on all of Debtor's personal property assets.

### C. Adequate Protection Facts

The Hotels are generating progressively more income as the renovations continue and while no formal appraisal has been done recently, the Debtor believes the fair market value of both Hotels exceeds $18,000,000 while the Debt to LBUBS is only approximately $13,000,000. Both Hotels are projected to produce positive net income in most every remaining month of 2011. Over the next year, Debtor's operational income will continue to increase as expenses incurred, and income lost, due to the renovations are minimized. To provide PWB and LBUBS with additional adequate protection the Debtor will continue to make the monthly payment to PWB and commence in July to make interest only payments to LBUBS at the contractual interest rate of 5.99%, additionally, the order granting this Cash Collateral Motion will include the following provisions:

1. The Secured Creditors will receive a replacement lien against post-petition cash, accounts receivable, and inventory, and the proceeds of each of the foregoing, to the same extent and priority as any duly perfected and unavoidable liens in cash collateral held by such secured creditor as of the petition Date, limited to the amount of any cash collateral of such secured creditor is actually used by Debtor.

2. Debtor will provide to the Secured Creditors all interim statements and operating reports required to be submitted to the Office of the United States Trustee, and monthly cash flow reports, broken down by the expense line items in the Budget, upon being served with this motion.

The foregoing provisions, coupled with the value that will be preserved and generated through the continued operation of the Hotels, will provide PWB and LBUBS all the protection required under 11 U.S.C. § 363.

### III. RELIEF IS JUSTIFIED ON AN EMERGENCY BASIS

Under 11 U.S.C. § 363, Congress recognized that preliminary hearings on cash collateral would frequently be held on an emergency basis by stating therein that such hearings "shall be scheduled in accordance with the needs of the debtor." 11 U.S.C. § 363(c)(3). The courts have also recognized that emergency relief on the use of cash collateral is necessary after a bankruptcy

case is filed. *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1448 (9th Cir. 1985).  bankruptcy Courts have "realize[d] that ' in certain circumstances the entire reorganization effort may be thwarted id emergency relief is withheld' and that reorganization under the Bankruptcy Code 'is a perilous process, seldom more so than at the outset of the proceedings when the debtor is often without sufficient cash flow to fund essential business operations.' … It is for this very reason that Congress specified that hearings concerning the use of cash collateral 'shall be scheduled in accordance with the needs of the debtor.'" *Id.*, at p. 1449, n. 21, *citing In re Sullivan Ford Sales*, 2 B.R. 350, 355 (Bankr. D. Me. 1980).

As stated in the Jung declaration filed concurrently herewith, the hotel business is very competitive.  One of the most important variables customers weigh when choosing a hotel is the level and quality of service.  Unless Debtor obtains immediate authorization to use cash collateral to pay all ordinary and necessary obligations, the quality of service at the Hotels will be adversely impacted, leading to occupancy declines and lost revenue.  If this Cash Collateral Motion is not granted immediately, Debtor's entire reorganization could be irreparably damaged.  Under these circumstances, granting relief on an emergency basis is both necessary and appropriate.

### IV. USE OF CASH COLLATERAL FOR OPERATIONS SHOULD BE AUTHORIZED IN ACCORDANCE WITH THE BUDGET

"Cash collateral" is defined in the Bankruptcy Code as follows:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11. U.S.C. § 363(a).  It is universally acknowledged that the debtor's cash "is the life blood of the business" and that  the bankruptcy court must assure that such life blood "is available for use even if to a limited extent." *In re Mickler*, 9 B.r. 121, 123 (Bankr. M.D. Fla. 1981).

To obtain bankruptcy court authorization to use cash collateral, a debtor must establish that the "interest" of the creditors holding liens on the subject collateral will remain "adequately

- 7 -
EMERGENCY MOTION FOR USE OF CASH COLLATERAL

protected." 11 U.S.C. § 363(e). Under *U.S. v. Timbers of Inwood Forest*, 484 U.S. 365 (1988), the "interest in property" entitled to adequate protection under 11 U.S.C. § 363(c) is no more or less than the "value of the collateral" that is subject to the secured creditor's lien. Pursuant to this holding, a debtor is merely required to show that the secured creditor's collateral will not decline in value under the debtor's proposed usage of cash collateral. *Id*., at p. 362; *In re Ledgemere Land Corp.*, 115 B.R. 338, 343 (Bankr. D. Mass. 1990) [so long as the receivables being collected and used by the debtor are being replaced by sufficient new receivables in which the creditor is granted a security interest, the creditor is adequately protected); *In re Anderson*, 88 B.R. 877, 889 (Bankr. N.D. Ind. 1988) [secured creditor is adequately protected if creditor is unable to show a decline in asset value from the petition date]; *In re Elmore*, 94 B.R. 670 (C.D. Cal. 1988).

As illustrated in the Budget attached as Exhibit "A" to the Jung declaration, the cash collateral pool in which PWB and LBUBS have a secured interest will not decline through the usage proposed by Debtor. To the contrary, the overall value of the estate will increase through this usage, leaving PWB and LBUBS' interests adequately protected.

This pool of income in which secured creditors, including PWB and LBUBS, hold an interest will not decline through the usage proposed by Debtor. To the contrary, the overall value of the underlying collateral, i.e., the Hotels, will increase through this usage, leaving Debtor's secured creditors' interests adequately protected. Furthermore, Debtor anticipates making adequate protection payments to LBUBS and PWB throughout this chapter 11 case as discussed herein.

Finally, Debtor requests this Court to direct PWB and LBUBS to comply both with the order granting Debtor's proposed usage of cash collateral, and in connection with, and as more fully detailed in, the concurrently filed First Day Omnibus Motion that requests authorization for applicable banks, and other financial institutions to receive, process, honor, and pay any and all checks drawn on debtor's pre-petition accounts. This Court may issue such an order under 11 U.S.C. § 105(a), which authorizes the Court to issue "any order, process, or judgment that is

- 8 -
<u>EMERGENCY</u> MOTION FOR USE OF CASH COLLATERAL

necessary or appropriate to carry out the provisions of this title."

## V. NOTICE

Debtor intends to provide notice of this Cash Collateral Motion by overnight mail, e-mail, facsimile, or hand delivery on (i) the Office of the United States Trustee; (ii) Debtor's twenty largest unsecured creditors; (iii) PWB and LBUBS, and any other secured parties; and (iv) any party requesting special notice.

## VI. CONCLUSION

Based on the foregoing, Debtor respectfully requests that the Emergency Cash Collateral Motion be granted, that the proposed order filed concurrently herewith be entered, and that this Court grants such other and further relief as it may deem just and proper.

Dated: June 6 2011                             GORDON & REES LLP


By:  */s/ William M. Rathbone*
     William M. Rathbone
     Daniel C. Silva
     [Proposed] Attorneys for Debtor
     JCK HOTELS, LLC,
     a Delaware limited liability company