1  William M. Rathbone  (SBN:  95864)
   Daniel C. Silva  (SBN:  264632)
2  GORDON & REES LLP
   101 W. Broadway
3  Suite 2000
   San Diego, CA  92101
4  Telephone: (619) 696-6700
   Facsimile: (619) 696-7124
5
   [Proposed] Attorneys for Debtor
6  JCK Hotels, LLC, formerly known as
   Mira Mesa Hotels, LLC
7

8

9              **UNITED STATES BANKRUPTCY COURT**

10            **SOUTHERN DISTRICT OF CALIFORNIA**

11  JCK HOTELS, LLC, formerly known as      )    CASE NO.  11-09428
    Mira Mesa Hotels, LLC                    )
12                                           )    Chapter 11
                                             )
13                          Debtor.          )    **DEBTOR'S OPPOSITION TO**
                                             )    **CREDITOR LBUBS 2005-C2 MIRA**
14                                           )    **MESA LIMITED PARTNERSHIP'S**
                                             )    **MOTION FOR ORDER DISMISSING**
15                                           )    **CHAPTER 11 CASE**
                                             )
16                                           )    Time:  2:00 p.m.
                                             )    Date:   September 15, 2011
17                                           )    Court: 2
                                             )    Judge: Hon. Louise DeCarl Adler
18  _____ )

19

20

21

22

23

24

25

26

27

28

-1-

DEBTOR'S OPPOSITION TO CREDITOR LBUBS 2005-C2 MIRA MESA LIMITED PARTNERSHIP'S
MOTION FOR ORDER DISMISSING CHAPTER 11 CASE

# Table of Contents

Page

I.  INTRODUCTION ................................................................................................1

II.  FACTS ...............................................................................................................2

    A.  DEBTOR'S MEMBERS DESIRE TO PURCHASE THE HOTELS ....................2

    B.  LENDER REQUIRED THAT THE MEMBERS ACCEPT
       UNCONSCIONABLE CONDITIONS ON ASSUMPTION OF THE
       LOAN ..............................................................................................................3

    C.  THE OPERATING AGREEMENT PURPORTS TO PRECLUDE
       DEBTOR FROM FILING FOR BANKRUPTCY ..................................4

    D.  DEBTOR RENOVATES THE HOTELS TO COMPLY WITH THE
       FRANCHISE AGREEMENTS ............................................................7

ARGUMENT .................................................................................................................8

III.  DEBTOR DID NOT WAIVE, AND CANNOT WAIVE, ITS FUNDAMENTAL
     RIGHT TO FILE BANKRUPTCY ....................................................................8

IV.  AS A NON-MEMBER, LBUBS HAS NO STANDING TO ENFORCE THE
     OPERATING AGREEMENT ..........................................................................10

V.  LBUBS HAS FAILED TO ESTABLISH "CAUSE" EXISTS TO ALLOW THIS
    COURT TO GRANT THE MOTION TO DISMISS .........................................11

    A.  DEBTOR WAS AUTHORIZED TO FILE BANKRUPTCY .............................11

    B.  THIS COURT SHOULD REFUSE TO FOLLOW THE ONE CASE
       CITED IN THE MOTION TO DISMISS THAT HAS UPHELD AN
       OPERATING AGREEMENT WAIVER TO FILE BANKRUPTCY .................12

        1.  In re DB Capital Holdings, LLC..............................................13

        2.  In re DB Capital Holdings Should Not be Followed by this Court ..........15

        3.  Additional Limitations Support Rejecting In re DB Capital
           Holdings ..............................................................................16

            a.  LBUBS Has No Standing to Bring the Motion to Dismiss ..........16

            b.  Failure to File the Petition Could Have Resulted in
               Breaches of Fiduciary Duty ........................................17

VI.  THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE DEBTOR
     FILED FOR CHAPTER 11 PROTECTION IN GOOD FAITH ......................18

VII.  CONCLUSION ...........................................................................................20

DEBTOR'S OPPOSITION TO CREDITOR LBUBS 2005-C2 MIRA MESA LIMITED PARTNERSHIP'S
MOTION FOR ORDER DISMISSING CHAPTER 11 CASE

Table of Authorities

Page

**Cases**

*Baio v. Commercial Union Ins. Co.*,
   410 A.2d 502 (Del. 1979) ................................................................................. 8

*Bank of China v. Huang (In re Huang)*,
   275 F.3d 1173 (9th Cir. 2002) ......................................................................... 9

*Case v. Los Angeles Lumber Prods. Co.*,
   308 U.S. 106 (1939).......................................................................................... 10

*DB Capital Holdings, LLC v. Aspen HH Ventures, LLC*
   *(In re DB Capital Holdings)*,
   2010 Bankr. LEXIS 4176 (B.A.P. 10th Cir., Dec. 6, 2010) ................................. 12, 13, 15, 16

*Green Bridge Capital S.A. v. Shapiro*, Case
   2011 Bankr. LEXIS 344 (Bankr. D. Del., Jan. 31, 2011)...................................... 13

*Guth v. Loft, Inc.*,
   23 Del. Ch. 255 (1939),
   *aff'd*, 25 Del. Ch. 363 (1941) ........................................................................... 18

*In re Albany Partners, Ltd.*,
   749 F.2d 670 (11th Cir.1984) ........................................................................... 19

*In re Arnold*,
   806 F.2d 937 (9th Cir.1986) ............................................................................. 19

*In re Avalon Hotel Partners, LLC*,
   302 B.R. 377 (Bankr. D. Or. 2003)................................................................... 9, 11

*In re Cabernet Holdings, LLC*,
   2010 Bankr. LEXIS 1980 (Bankr. M.D. N.C., June 21, 2010)............................. 13

*In re Capitol Food Corp of Fields Corner*,
   490 F.3d 21 (1st Cir. 2007) .............................................................................. 19

*In re Chisum*,
   847 F.2d 597 (9th Cir. 1988) ........................................................................... 19, 20

*In re Cult Awareness Network, Inc.*,
   151 F.3d 605 (7th Cir.1998) ............................................................................. 10

*In re Giggles Restaurant, Inc.*,
   103 B.R. 549 (Bankr. D. N.J. 1989) ................................................................. 17

*In re Gucci*,
   174 B.R. 401 (Bankr. S.D. N.Y. 1994).............................................................. 17

*In re Jennings*,
   306 B.R. 672 (B.A.P. 9th Cir. 2004.................................................................. 9

*In re Kriger*,
   2 B.R. 19 (Bankr. D. Or. 1979)........................................................................ 10

-ii-

Table of Authorities
(Continued)

Page

*In re Lake County Grapevine Nursery Operations*,
441 B.R. 653 (Bankr. N.D. Cal. 2010) ................................................................. 13

*In re Los Angeles Lumber Prods. Co.*,
24 F. Supp. 501 (S.D. Cal. 1938).......................................................................... 10

*In re Marsch*,
36 F.3d 825 (9th Cir. 1994) ................................................................................... 19

*In re Marshall*,
403 B.R. 668 (C.D. Cal. 2009) .............................................................................. 19

*In re Orchard at Hansen Park, LLC*,
347 B.R. 822 (N.D. Tex. 2006) ............................................................................. 17

*In re Real Homes, LLC*,
352 B.R. 221 (Bankr. D. Idaho 2005)..................................................................... 13

*In re Southwest Equipment Rental*,
152 B.R. 207 (Bankr. E.D. Tenn. 1992) ................................................................. 16

*In re Sterling Mining Co.*,
2009 WL 2475302 (Bankr. D. Idaho, Aug. 11, 2009)............................................. 17

*In re Sylmar Plaza, L.P.*,
314 F.3d 1070 (9th Cir. 2002) ............................................................................... 19

*In re Tru Block Concrete Products, Inc.*,
27 B.R. 486 (Bankr. S.D. Cal. 1983) ..................................................................... 10

*In re Wyatt & McAlister, PLLC*,
2010 Bankr. LEXIS 1413 (Bankr. S. D. Miss., Apr. 23, 2010)............................... 13

*In re Yaryan Naval Stores Co.*,
214 F. 563 (6th Cir. 1914) ..................................................................................... 8

*Kirk v. Hamilton*,
102 U.S. 68 (1880).................................................................................................. 9

*Matter of Richman*,
104 F.3d 654 (4th Cir. 1997) ................................................................................. 10

*Maxfield v. Terry*,
4 Del. Ch. 618 (Del. Ch. 1873)............................................................................... 8

*Mercantile Trading Co. v. Rosenbaum Grain Corp.*,
17 Del. Ch. 563 (1931) .......................................................................................... 18

*Price v. Gurney*,
324 U.S. 100 (1945)......................................................................................... 11, 13

*R&R Capital, LLC v. Buck & Doe Run Valley Farms, LLC*,
2008 Del. Ch. LEXIS 115 (Del. Ch., Aug. 19, 2008)............................................. 12

-iii-

Table of Authorities
(Continued)

Page

*Realty Growth Investors v. Council of Unit Owners*,
  453 A.2d 450 (Del. 1982) ................................................................................ 8

*Royal Indemnity Co. American Bond & Mortgage Co.*,
  289 U.S. 165 (1933) ...................................................................................... 16

*Stackhouse v. Barnston*,
  10 Ves. Jr. 453 (1805, Ch.) ............................................................................. 8

**Statutes**

11 U.S.C. § 301(a) ........................................................................................ 11

11 U.S.C. § 1112(b) ...................................................................................... 14

11 U.S.C. § 1112(b)(2) ................................................................................. 16

Del. Corp. Law, § 141(e) .............................................................................. 18

Delaware Limited Liability Company Act, § 18-402 .................................... 11

**Other Authorities**

2 COLLIER ON BANKRUPTCY ¶ 301.04[2][c] (Alan N. Resnick & Henry J. Sommer, eds.
  rev. 16th ed.) ............................................................................................... 11

BLACK'S LAW DICTIONARY 1761 (Eighth ed. 2004) ..................................... 16

1      JCK HOTELS, LLC ("Debtor") hereby opposes creditor LBUBS 2005-C2 MIRA MESA

2 LIMITED PARTNERSHIP's ("LBUBS") motion for order dismissing Debtor's chapter 11 case

3 (Doc. No. 52, the "Motion to Dismiss" or "Motion").

4 **I.**     **INTRODUCTION**

5      The Motion to Dismiss requests this Court close its doors to the distressed but honest

6 debtor and overturn decades of public policy and Ninth Circuit precedent which prohibits

7 bankruptcy filing waivers as a violation of a prospective debtor's fundamental right. LBUBS

8 urges this Court to terminate the Debtor's reorganization efforts, even though it is over secured

9 by millions of dollars, so it can quickly foreclose upon the Debtor's hotels and enjoy a financial

10 windfall.

11      In support of its request for this early and draconian relief, LBUBS primarily relies upon

12 a single, *unpublished*, *non-binding* opinion, which is based upon facts that are wholly

13 distinguishable to the instant case, because the movant in the cited case was a *member* of the

14 referenced limited liability company, rather than a *creditor*, as is LBUBS here. Here, LBUBS,

15 **who is not a member of the Debtor or a party to the Debtor's operating agreement**, attempts

16 to have this Court enforce a hidden, definitional provision in the Debtor's operating agreement,

17 despite an express prohibition in that operating agreement against enforcement of its provisions

18 by non-member creditors. It has no right or standing to do so.

19      LBUBS, a creditor with its roots in the infamously overreaching Lehman Brothers, is

20 simply displaying its enormous greed. Through its Motion, LBUBS seeks the ability to foreclose

21 on Debtor's main asset - two hotels worth approximately $18 million - thereby wiping out all of

22 the Debtor's members' equity, including their approximately $12 million down payment, *and*

23 any chance for recovery by Debtor's unsecured creditors. In return, **LBUBS would enjoy a $5**

24 **million profit.**

25      It is conceivable that LBUBS is using this case as a trial balloon in the hope that this

26 Court will give life to the inapplicable, unpublished decision from the Tenth Circuit Bankruptcy

27 Appellate Panel in order to serve as a platform for large lenders to force borrowers to rewrite

28 their governing documents to prevent them from exercising their fundamental right to

bankruptcy protection.  By finding success here, LBUBS and its affiliates would then have a blueprint for replication country wide.

Debtor filed its chapter 11 petition in good faith and with all requisite authority in an effort to preserve and protect its assets so that it can pay *all* of its creditors, including LBUBS. The Motion relies on a void provision unknown to Debtor's members and buried within an operating agreement drafted by or at the direction of LBUBS.  However, by the very language of the operating agreement LBUBS is a stranger, with no authority to enforce its terms.

The Motion to Dismiss should be denied so that Debtor can continue its reorganization efforts for the benefit of all creditors and parties in interest.

## II.    FACTS

### A.    DEBTOR'S MEMBERS DESIRE TO PURCHASE THE HOTELS

In late 2007, Debtor agreed to purchase two hotels located at 9880 and 9888 Mira Mesa Blvd, San Diego, CA 92131.  The hotels include a Holiday Inn Express and Comfort Suites (the "Hotels").  Debtor's members, Charles and Sarah Jung, Richard and Grace Choe, and Dochun and Nam Kim (collectively, the "Members"), originally desired to purchase the Hotels through their existing entities.  However, the lender, whose note the Members would eventually assume, exclusively instructed the attorney for the Members what the ownership structure would be, that Delaware limited liability companies would have to be formed and/or own the Hotels, and what the content of those LLCs' governing documents would say.  It was the Members' intent to purchase the Hotels from Mira Mesa Holdings, Inc., the parent to the entity that owned the Hotels ("Seller").

The Members purchased the Hotels with a combination of personal funds and loans.  The Members pooled approximately $11.6 million dollars, and then financed the remainder of the purchase price of the Hotels by assuming the existing loan on the Hotels (the "Loan").  The Loan was then held by LaSalle National Bank Association, as Trustee under that certain Pooling and Servicing Agreement dated as of April 11, 2005, for the registered Holders of LB-UBS Commercial Mortgage Trust 2005-C2, Commercial Mortgage Pass-Through Certificates, Series 2005-C2 ("Lender").  The Members could not obtain alternative financing, and agreed to

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

Lender's terms for the assignment and assumption of the Loan.

**B.    LENDER REQUIRED THAT THE MEMBERS ACCEPT UNCONSCIONABLE CONDITIONS ON ASSUMPTION OF THE LOAN**

Once the Deposit had gone "hard" (i.e., the Members risked forfeiting a deposit to Seller if the purchase did not close because of the Members' inability to obtain financing), Lender required that the Members restructure the purchasing entities that met the following criteria (the "Requirements"):

- the purchaser had to be a limited liability company (an "LLC") formed in the State of Delaware; and

- two levels of LLCs had to be in place.

Lender's insistence on the Requirements was due to the nature of the Loan, which is a conduit loan that was pooled into a trust and sold to investors. As a result, the broker that paired the Members with Seller suggested that the Members obtain legal counsel ("Restructuring Counsel") to form new LLCs, prepare operating agreements for the new LLCs in accordance with the Requirements, and to comply with Lender's demands. Pursuant to the Requirements and other demands of Lender, multiple entities were formed or restructured by Restructuring Counsel (the "Restructuring Entities"), and thousands of pages of governing documents and agreements were prepared for the Members to sign (the "Transaction Documents") in an exhausting marathon of document execution.

Charles Jung would be the manager of both Debtor and JCK Holdings, LLC, a Delaware LLC that would manage the Hotels. Mr. Jung, along with all of the other Members, speaks Korean as his first language and has an extremely difficult time understanding and speaking English. Mr. Jung has a low reading comprehension of English. Mr. Jung cannot comprehend daily newspapers written in English. Even though a sophisticated businessman would have difficulty comprehending the full import of the Transaction Documents, or be able to determine what a "Material Action" was, the Members could barely read English.

**All of the Transaction Documents were prepared by Restructuring Counsel at the direction of Lender. None of the Members ever negotiated or crafted the terms, structure, or rights contained in any of the thousands of Transaction Documents.**

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

1    Thousands of pages of documents were given to the Members to sign before close of

2    escrow on the sale of the Hotels.  All of the Transaction Documents were written in English.

3    Although Restructuring Counsel reviewed these documents with the Members, he did so entirely

4    in English without the aid of a Korean translator at any meeting between the Members and

5    Restructuring Counsel.  A Korean translation was never provided for any of the Transaction

6    Documents.  (Note, a Korean translator was provided at the 341a hearing for Mr. Jung).  As

7    such, Mr. Jung never understood that tucked away in Debtor's operating agreement (the

8    "Operating Agreement") was a provision that attempted to prevent Debtor from ever taking a

9    "Material Action."[1]  Mr. Jung had no idea what a "Material Action" was, or what Debtor was not

10   allowed to do by virtue of the "Material Action Provision."  He was effectively presented with

11   hundreds of pages of documents and told to sign.

12   Mr. Jung, through his limited ability to comprehend spoken and written English,

13   understood only that if Debtor filed bankruptcy, he would be subject to the "bad boy guarantee"

14   he signed in conjunction with assuming the Loan.  Mr. Jung believed that the bad boy guarantee

15   here would be triggered upon Debtor filing bankruptcy, and the Members thereafter may become

16   personally liable for all obligations under the Loan.  Mr. Jung was under the impression that by

17   filing bankruptcy he may be subject to a personal guarantee on the Loan, but that Debtor could

18   file for bankruptcy nonetheless.  Prior to Debtor's bankruptcy, Mr. Jung had no clear

19   understanding of bankruptcy, the Bankruptcy Code, or the general concept behind filing for

20   bankruptcy.

21   **C.    THE OPERATING AGREEMENT PURPORTS TO PRECLUDE DEBTOR
22         FROM FILING FOR BANKRUPTCY**

23   There is no requirement that a majority interest is necessary for either JCK Hotels, LLC

24   or JCK Holdings, LLC to act even though Mr. Jung and his wife owned 65% of both JCK

25   Holdings, LLC and JCK Hotels, LLC.  Rather the "Manager is authorized to act individually and

26   without the holding of a meeting or obtaining a written consent," subject to the vague and

27   misleading "Material Action" provision.  The Operating Agreement claims that Debtor is a

28

[1] Attached as Exhibit "Q" to the Declaration of Solomon Garber in support of the Motion to Dismiss is a true and correct copy of Debtor's Operating Agreement.

- 4 -

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

"special purpose entity" (a "SPE").  A SPE is not defined anywhere in the Operating Agreement.

Tucked away in Schedule "A" to the Operating Agreement on page 21, a definition appears for a

"SPE Condition."  Mr. Jung had no understanding of what a SPE was, or what a SPE Condition

means.  This term is not clearly defined in the body of the Operating Agreement and could have

had any definition or meaning that Lender decided.

On page 6 of the Operating Agreement appears Section 9(i), titled "Limitations of the

Company's Activities" that reads as follows:[2]

> (i)      The purpose of this Section 9(i) is to adopt certain provisions required in order to qualify the Company as a "special purpose entity."

> (ii)     So long as the SPE Condition exists, the Managers shall be Charles Jung, individual, or if such individuals are unable to act as Manager, such other person or entity as shall be determined in accordance with this Agreement, provided that such person or entity shall not be the manager of a Member.

> (iii)    The Member shall not, so long as the SPE Condition exists, amend, alter, change or repeal any provision of this Agreement or Schedule A of this Agreement without satisfaction of the Holder Condition.  Subject to this Section 9(i), the Member reserves the right to amend, alter, change or repeal any provisions contained in this Agreement in accordance with Section 29.

> (iv)    Notwithstanding any other provision of this Agreement and any provision of law that otherwise so empowers the Company, the Member of the Manager, so long as the SPE condition exists, to the maximum extent permitted by law neither the Member nor any Manager shall be authorized or empowered, nor shall they permit the Company, to take any Material Action.

> (v)     So long as the SPE Condition exists, the Managers and the Member shall cause the Company to do or cause to be done all things necessary to preserve and keep in full force and effect its existence, rights (charter and statutory) and franchises; provided, however, that the Company shall not be required to preserve any such right or franchise if: (1) the Managers shall determine that the preservation thereof is no longer desirable for the conduct of its business and that the loss thereof is not disadvantageous in any material respect to the Company and (2) such preservation is not required under the Transaction Documents.  So long as the SPE Condition exists, the Managers shall also cause the Company to:

> > (1)    maintain its own separate books and records and bank accounts;
> > (2)    at all times hold itself out the public and all other Persons as a legal entity separate from the Member and any other Person;
> > (3)    have one or more Managers separate from the Manager of the Member;
> > (4)    file its own tax returns, if any, as may be required under applicable law, to the extent (1) not part of a consolidated group filing a consolidated return or returns or (2) not treated as a division for tax

---

[2] Debtor cites Section 9 of the Operating Agreement in full only to demonstrate to lack of transparency of the "Material Action Provision," which the Motion to Dismiss would have this Court believe is prominent and obvious to any reader.

purposes of another taxpayer, and pay any taxes so required to be paid under applicable law;

(5)    not commingle its assets with assets of any other Person;

(6)    conduct its business in its own name and strictly comply with all organization formalities to maintain its separate existence;

(7)    maintain separate financial statements;

(8)    pay its own liabilities out of its own funds;

(9)    maintain an arm's length relationship with its Affiliates and the Member;

(10)   pay the salaries of its own employee, if any;

(11)   not hold out its credit or assets as being available to satisfy the obligations of others;

(12)   allocate fairly and reasonably any overhead for shared office space;

(13)   use separate stationery, invoices and checks;

(14)   not pledge its assets as security for the obligations of any other Person;

(15)   correct any known misunderstanding regarding its separate identity;

(16)   maintain adequate capital in light of its contemplated business purpose, transaction and liabilities;

(17)   cause its Manager to observe all Delaware limited liability company formalities;

(18)   not acquire any securities of the Member; and

(19)   cause the managers, officers, agents and other representatives of the Company to act at all times with respect to the company consistently and in furtherance of the foregoing and in the best interests of the company.

(vi)    So long as the SPE Condition exists, the Managers shall cause or permit the company to:

(1)    guarantee any obligation of any Person, including any Affiliate;

(2)    engage, directly or indirectly, in any business other than the actions required or permitted to be performed under Section 7 or this Section 9(i);

(3)    incur, create or assume any indebtedness other than trade payables incurred in the ordinary course of business and the Indebtedness or;

(4)    make or permit to remain outstanding any loan or advance to, or own or acquire any stock or securities of, any Person, except that the Company may invest in those investments permitted under Transaction Documentations [sic] and may make any advance required or expressly permitted to be made pursuant to any provisions of Transaction Documents and permit the same to remain outstanding in accordance with such provisions; or

(5)    to the fullest extent permitted by law and subject to Section 6(b) hereof, engage in any dissolution, liquidation, consolidation, merger, sale or transfer of ownership interest or all or substantially all of its assets other than such activities as are permitted in the Transaction Documents.

The above citation appears over pages 6 through 9 of the Operating Agreement.  Notably,

bankruptcy, or the restriction to file bankruptcy, is not mentioned in the rambling list of actions

- 6 -

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

Debtor could not take.  The vague and completely undefined term "Material Action" is cited on page 6 at 9(iv).  It is not until page 20, in Schedule "A" that the Operating Agreement informs the reader of what the definition of "Material Action" includes.  "Material Action" is ultimately defined as "a petition seeking, or consent to, reorganization or relief with respect to the Company under any applicable federal or state law relating to bankruptcy."  The Operating Agreement was thus structured to avoid immediate definition of both a "SPE Condition" or "Material Action."  Instead, the Operating Agreement hid the true meaning and defines these terms in an exhibit thereto.  "Material Action" is defined so that Debtor's purported waiver of its right to file bankruptcy appears nowhere in the body of the Operating Agreement.

### D.   DEBTOR RENOVATES THE HOTELS TO COMPLY WITH THE FRANCHISE AGREEMENTS

LBUBS contends that the Debtor acted in "bad faith" by using revenue to remodel the Hotels.  Not so.  The Hotels are operated by Debtor under licensing and franchise agreements with Holiday Inn Express and Comfort Suites (the "Franchise Agreements").  Since 2008, and pursuant to the Franchise Agreements governing Debtor's use of certain intellectual property and operation of the Hotels, Debtor has renovated and undertaken substantial upgrade projects at the Hotels as required by a "Property Improvement Plan" imposed on Debtor via the Franchise Agreements.  Since commencing the renovations called for in the Property Improvement Plan, Debtor has expended approximately one and a half million dollars to remain in compliance with the Franchise Agreements.

In 2008, Lender and Debtor agreed to a "Renovation Reserve Agreement."  Attached as Exhibit "B" to the Jung Declaration is a true and correct copy of the Renovation Reserve Agreement.  The Renovation Reserve Agreement expressed Lender's consent to and desire for Debtor to complete the renovations on the Hotels.

/ / /

The Holiday Inn Express renovations under the terms of the Property Improvement Plan are nearly 95% complete, requiring only the completion of administrative issues and payment of the balance for certain fees and goods.  The Comfort Suites renovations are approximately 50%

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

DEBTOR'S OPPOSITION TO CREDITOR LBUBS 2005-C2 MIRA MESA LIMITED PARTNERSHIP'S MOTION FOR ORDER DISMISSING CHAPTER 11 CASE

complete, with 71 of the 132 units completely renovated in accordance with the Property Improvement Plan. The remainder of the units are scheduled to be renovated by summer of 2012.

Debtor experienced cash flow problems during the renovations when gross revenues dropped by almost 40% from 2008 levels. As such, Debtor had to remain in compliance with the Franchise Agreements. The renovations consumed a significant portion of Debtor's resources, and resulted in Debtor's default on the Loan. Before Debtor filed its chapter 11 petition, it made numerous efforts to refinance the Loan with LBUBS. LBUBS would not renegotiate the terms of the Loan with Debtor, prompting this chapter 11 case.

## ARGUMENT

### III.   DEBTOR DID NOT WAIVE, AND CANNOT WAIVE, ITS FUNDAMENTAL RIGHT TO FILE BANKRUPTCY

The right to file bankruptcy is a fundamental right, provided in Article I, Section 8, of the Constitution, pursuant to which Congress has enacted today's "Bankruptcy Code," codified as Title 11 of the United States Code. When Congress enacted the Bankruptcy Act, since codified as the Bankruptcy Code, it created "[r]ights and privileges so positively bestowed [they] cannot be destroyed, denied or abridged by any power save that which created and brought them into being." *In re Yaryan Naval Stores Co.*, 214 F. 563, 565 (6th Cir. 1914).

Delaware law defines waiver as "the voluntary and intentional relinquishment of a known right" (*Realty Growth Investors v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982)) either conferred by statute or secured by contract (*Baio v. Commercial Union Ins. Co.*, 410 A.2d 502, 508 (Del. 1979)). Where a party waives a right but revokes it without a detriment to the receiving party, Delaware courts have generally allowed the party to change her mind. *See, e.g.*, *Maxfield v. Terry*, 4 Del. Ch. 618, 629-30 (Del. Ch. 1873), quoting *Stackhouse v. Barnston*, 10 Ves. Jr. 453, 466 (1805, Ch.) ("A mere waiver signifies nothing more than an expression of intention not to insist upon the right; which in equity will not, without consideration, bar the right any more than, at law, accord without satisfaction would be a plea.").

Debtor did not voluntarily and intentionally relinquish its right to file bankruptcy. First,

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

- 8 -

Mr. Jung and the other Members did not ever comprehend spoken or written English, the purpose of the Requirements, or the general concept of bankruptcy. **The Operating Agreement's attempt to define filing bankruptcy as a "Material Action" is wholly undermined by the fact that such a "Material Action" was obscurely referenced in a three page Section of the Operating Agreement, and defined over ten pages later in an exhibit to the Operating Agreement.** LBUBS imposed the Requirements on the Members as a condition to agreeing to the assignment of the Loan. The Members' inability to comprehend English, and lack of a translation of any of the thousands of Transaction Documents prevented them from intentionally and voluntarily giving up their right to file for bankruptcy. The Members did not even know what bankruptcy was.

Moreover, the Operating Agreement discusses the impact of the Members' bankruptcy in numerous places throughout the Operating Agreement. *See* §§ 6(b); 22(b). However, Debtor's purported waiver of its right to file for bankruptcy - a waiver that has been universally struck down - requires piecing together multiple sections, definitions, and portions of the Operating Agreement. Assuming Debtor could have waived its right to file for bankruptcy, which it did not, it is incomprehensible that such waiver would not have been prominently and clearly stated in large boldfaced print. No waiver occurred here because it violates basic freedoms, and was done, if at all, unknowingly, involuntarily, and unintentionally.

Ninth Circuit case authority is in accord. "It is against public policy for a debtor to waive the prepetition protection of the Bankruptcy Code." *Bank of China v. Huang (In re Huang)*, 275 F.3d 1173, 1177 (9th Cir. 2002); *see also In re Jennings*, 306 B.R. 672, 675 (B.A.P. 9th Cir. 2004); *In re Avalon Hotel Ptnrs, LLC*, 302 B.R. 377, 383 (B.A.P. 9th Cir. 2003) ("Courts appear universally to find [covenants not to file bankruptcy] unenforceable"). "It is a well settled principal that an advance agreement to waive the benefits conferred by the bankruptcy laws is wholly void as against public policy." *In re Tru Block Concrete Products, Inc.*, 27 B.R. 486, 492 (Bankr. S.D. Cal. 1983) (Meyers, J.); *accord In re Kriger*, 2 B.R. 19, 23 (Bankr. D. Or. 1979) (agreement not to file bankruptcy void as a matter of public policy); *In re Los Angeles Lumber Prods. Co.*, 24 F. Supp. 501, 515-16 (S.D. Cal. 1938) (on public policy grounds, a bond

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

indenture provision that prohibited the debtor from taking any action that would impair or impede bondholder rights could not restrict the debtor's access to reorganization relief), reversed on other grounds in *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106 (1939).

The Material Action Provision was void and cannot operate as a waiver of Debtor's right to file bankruptcy. The Motion to Dismiss should be denied on these fundamental, and robust public policy grounds alone.

## IV.   AS A NON-MEMBER, LBUBS HAS NO STANDING TO ENFORCE THE OPERATING AGREEMENT

In addition to asking this Court to ignore Ninth Circuit precedent and revolutionize bankruptcy law, the Motion to Dismiss also requests this Court to create substantive contractual rights and rewrite the Delaware Limited Liability Company Act. LBUBS asserts that it has standing to bring the Motion to Dismiss as a "party in interest." However, it is not a party to the Operating Agreement and therefore has no standing to enforce any provision therein.

LBUBS is not a member of Debtor. It was not a signatory of the Operating Agreement. And, significantly, the Operating Agreement expressly forbids LBUBS from enforcing any provision of the Operating Agreement. Section 24 of the Operating Agreement provides:

> None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or any creditor of the Member.

Thus assuming for the sake of argument that there was a waiver of Debtor's right to file chapter 11, which there was not, LBUBS has no right to ask this Court to enforce that provision. Strict rules that narrowly define the scope of those who have standing to participate in bankruptcy proceedings, promote the swift and efficient administration of the estate and avoid the needless multiplication of litigation. *Matter of Richman*, 104 F.3d 654, 656-57 (4th Cir. 1997); *see also In re Cult Awareness Network, Inc.*, 151 F.3d 605, 609 (7th Cir.1998). Therefore, LBUBS has no interest in the Operating Agreement whatsoever, and therefore cannot base the Motion to Dismiss on provisions contained therein.

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

## V.  LBUBS HAS FAILED TO ESTABLISH "CAUSE" EXISTS TO ALLOW THIS COURT TO GRANT THE MOTION TO DISMISS

Section 1112(b)(1) allows a court to dismiss a case under chapter 11 if the movant establishes cause and that such dismissal is in the best interest of creditors and the estate. LBUBS requests this Court to dismiss this Case on two separate grounds: (i) Debtor did not have authority to file bankruptcy pursuant to the Material Action Provision; and (ii) Debtor's petition for relief was filed in bad faith.  LBUBS has failed to carry its burden of establishing cause, and therefore the Motion to Dismiss should be denied.  To grant dismissal would wipe out the unsecured creditors and allow LBUBS a profit/windfall of almost $5 Million Dollars.

### A.    DEBTOR WAS AUTHORIZED TO FILE BANKRUPTCY

A voluntary bankruptcy case is commenced by the filing of a petition by an entity that may be a debtor.  11 U.S.C. § 301(a).  Similar to corporations (*see Price v. Gurney*, 324 U.S. 100, 106 (1945)), the requirements for filing a limited liability company bankruptcy will be contained in state law and the governing LLC agreement.  *In re Avalon Hotel Partners, LLC*, 302 B.R. 377 380 (Bankr. D. Or. 2003); 2 COLLIER ON BANKRUPTCY ¶ 301.04[2][c] (Alan N. Resnick & Henry J. Sommer, eds. rev. 16th ed.).

As a Delaware limited liability company, Debtor is governed by the Delaware Limited Liability Company Act (the "Act").  The Act states that:

> Unless otherwise provided in a limited liability company agreement, the management of a limited liability company shall be vested in its members in proportion to the then current percentage or other interest of members in the profits of the limited liability company owned by all of the members, the decision of members owning more than 50 percent of the said percentage or other interest in the profits controlling, provided, however, that if a limited liability company agreement provides for the management, in whole or part, of a limited liability company by a manager, the management of the limited liability company, to the extent so provided, shall be vested in the manager who shall be chosen in the manner provided in the limited liability company agreement.

Act, § 18-402.  Therefore, as manager and majority member of JCK Holdings, LLC, Charles Jung was empowered to authorize the filing of the petition for Debtor.

/ / /

The Motion to Dismiss cites Delaware authority standing for the proposition that "limited

- 11 -

1    liability companies are minimally regulated and have broad discretion in drafting operating

2    agreements and structuring their companies in ways that best suit their specific needs."  Motion

3    to Dismiss, 6:14-15.  LBUBS proceeds to argue, absent any Delaware authority, that "operating

4    agreements often include restrictions on when and how members can take material actions,

5    including instituting or consenting to the institution of bankruptcy proceedings."  *Id.*, 7:7-8.  The

6    nearest authority supporting this statement in the Motion to Dismiss is a Delaware case

7    upholding a provision in an LLC operating agreement wherein the company waived its right to

8    seek judicial dissolution.  *See R&R Capital, LLC v. Buck & Doe Run Valley Farms, LLC*, Case

9    No. 3803-CC, 2008 Del. Ch. LEXIS 115 *13 (Del. Ch., Aug. 19, 2008).  Beyond being an

10   unpublished and uncited Delaware trial level case, *R&R Capital* does not support upholding the

11   Material Action Provision.  The operating agreements in *R&R Capital* provided for dissolution

12   of the LLC, and merely restricted the members from availing themselves of the Act's statutory

13   provisions to judicial dissolution.  *This is distinct from the Material Action Provision, which*

14   *attempts to prevent any exercise of the fundamental right to file bankruptcy.*  As such, there is no

15   Delaware authority, let alone federal bankruptcy authority, upholding an LLC's non-

16   member/creditor's right to enforce a bankruptcy prohibition provision in an operating agreement.

17       **B.    THIS COURT SHOULD REFUSE TO FOLLOW THE ONE CASE CITED
              IN THE MOTION TO DISMISS THAT HAS UPHELD AN OPERATING**
18            **AGREEMENT WAIVER TO FILE BANKRUPTCY**

19            The Motion to Dismiss points to a single, unpublished, Tenth Circuit Bankruptcy

20   Appellate Panel case as support for the proposition that "public policy is best served by

21   upholding the self-imposed restrictions in the Operating Agreement[s] and dismissing the

22   unauthorized petition."  Motion to Dismiss, 9:7-8 (emphasis added), referring to *DB Capital*

23   *Holdings, LLC v. Aspen HH Ventures, LLC (In re DB Capital Holdings)*, 2010 Bankr. LEXIS

24   4176 (B.A.P. 10th Cir., Dec. 6, 2010).  ***In re DB Capital Holdings* is wholly inapplicable**

25   **because the party that brought the motion to dismiss there was a member of the debtor-**

26   **LLC.**  Here, LBUBS as a creditor and non-member of Debtor cannot rely on *In re DB Capital*

27   *Holdings*.  The key here is the language "self-imposed restrictions".  Under the facts described

28   above, the restrictions in the Debtor's Operating Agreement were "imposed" by LBUBS <u>not</u> the

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

- 12 -

1    Debtor.

2          Other than *In re DB Capital Holdings*, the Motion to Dismiss cites authority in which the

3    person or entity that signed the petition for relief did not have sufficient interest or consent from

4    other members to take such action.[3]   The Motion to Dismiss does not allege that Mr. Jung needed

5    the other Members' consent or other authorization to sign the petition, or that it was beyond the

6    scope of his ability as Debtor's manager.  Rather LBUBS only asserts that the Operating

7    Agreement fundamentally precluded Debtor from filing the petition whatsoever.  This argument

8    can **only** be supported by *In re DB Capital Holdings*.  This Court should refuse to follow this

9    case because it is distinguishable on the facts, non-binding, unpublished, unpersuasive, and

10   contrary to long-standing Ninth Circuit precedent.

## 1.    In re DB Capital Holdings, LLC

12         In *In re DB Capital Holdings*, DB Capital Holdings, LLC, the debtor ("DB Holdings"),

13   was a manager-operated Colorado limited liability company.  DB Holdings was created to

14   develop and sell a luxury condominium project in Aspen, Colorado, known as the Dancing Bear

15   Residences (the "Project").  DB Holdings' members consisted of: Aspen HH Ventures, LLC

16   ("Aspen"), the sole class A member; and Dancing Bear Development, LP ("DB Development"),

17   the sole class B member.  DB Development's general partner was Dancing Bear Management

18   ("DB Management"), and solely owned by Tom DiVenere.  DB Management managed DB

19   Holdings, but otherwise was not a member of, nor held any other direct interest in, DB Holdings.

20   *Id*., at *2.

21         DB Holdings' operating agreement granted management authority to DB Management.

22   Mr. DiVenere, as the sole owner of DB Management and general partner of DB Development,

23   was the *de facto* Project manager.  After the Project incurred financial difficulties, DB

24   Management filed a voluntary chapter 11 bankruptcy petition for DB Holdings.  Mr. DiVenere

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

---

[3] Such inapposite authority includes: *Green Bridge Capital S.A. v. Shapiro*, Case No. 10-56158, 2011 Bankr. LEXIS 344 (Bankr. D. Del., Jan. 31, 2011) (lack of member acquiescence to take LLC action); *In re Lake County Grapevine Nursery Operations*, 441 B.R. 653, 654 - 656 (Bankr. N.D. Cal. 2010) (non-member cannot control entity or file petition); *Price v. Gurney*, 324 U.S. 100 (1945) (corporate shareholders cannot authorize filing of bankruptcy petition); *In re Real Homes, LLC*, 352 B.R. 221, 225 (Bankr. D. Idaho 2005) (signer of petition without proper authorization); *In re Wyatt & McAlister, PLLC*, Case No. 09-04354, 2010 Bankr. LEXIS 1413 (Bankr. S.D. Miss., Apr. 23, 2010) (insufficient member consent to file petition); *In re Cabernet Holdings, LLC*, Case No. 10-50602, 2010 Bankr. LEXIS 1980 (Bankr. M.D. N.C., June 21, 2010) (same).

DEBTOR'S OPPOSITION TO CREDITOR LBUBS 2005-C2 MIRA MESA LIMITED PARTNERSHIP'S
MOTION FOR ORDER DISMISSING CHAPTER 11 CASE

1 signed the petition as "Member-Manager of Manager."  *Id*., at \*3.

2   <u>**Aspen, the debtor's class A member**</u>, filed a motion to dismiss the chapter 11 case

3 pursuant to 11 U.S.C. § 1112(b), alleging that DB Management filed the petition without

4 authorization and in bad faith.  *Id*., at \*6.  The bankruptcy court granted the motion to dismiss,

5 relying on the following provision in the debtor's operating agreement:

6    The Company (v) to [sic] extent permitted under applicable Law, will not institute
    proceedings to be adjudicated bankrupt or insolvent; or consent to the institution
7    of bankruptcy or insolvency proceedings against it; or file a petition seeking, or
    consent to, reorganization or relief under any applicable federal or state law
8    relating to bankruptcy ….

9 *Id*., at \*9.

10   In affirming the dismissal of the chapter 11 case, the Tenth Circuit Bankruptcy Appellate

11 Panel was not persuaded by the debtor's argument that numerous cases held contracts

12 unenforceable which prohibited filing for bankruptcy protection.  All of these cases, the court

13 reasoned, involved a debtor's agreement with third parties to waive the benefits of bankruptcy.

14 *Id*., at \*10.  **In *In re DB Capital Holdings*, however, one of the members was enforcing the**

15 **provision of the operating agreement that was binding on the other members.**

16   Additionally, DB Holdings did not provide, nor did the court locate, any cases "standing

17 for the proposition that members of an LLC cannot agree among themselves not to file

18 bankruptcy, and that if they do, such agreement is void as against public policy."  *Ibid*.  The

19 court further reasoned that this provision was not against public policy because of other

20 provisions in the operating agreement that practically prohibited the debtor from operating in

21 chapter 11, including: (i) a provision that required the manager to "conduct and operate its

22 business as presently conducted [i.e., pre-petition]; and (ii) that the manager would cease

23 operating in that capacity "upon the dissolution of bankruptcy" of DB Holdings.  *Ibid*.

24   Finally, the Tenth Circuit Bankruptcy Appellate Panel noted that DB Holdings "Does not

25 point to any record evidence that the [Operating Agreement's prohibition] was coerced by a

26 creditor.  For that reason, the Court declines to opine whether, under the rights set of facts, an

27 LLC's operating agreement containing terms coerced by a creditor would be unenforceable."

28 *Ibid*.

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

DEBTOR'S OPPOSITION TO CREDITOR LBUBS 2005-C2 MIRA MESA LIMITED PARTNERSHIP'S
MOTION FOR ORDER DISMISSING CHAPTER 11 CASE

2.      ***In re DB Capital Holdings* Should Not be Followed by this Court**

The holding in *In re DB Capital Holdings* should be rejected by this Court. Primarily, it is fundamentally distinguishable by virtue of the fact that LBUBS is not a member enforcing a provision of the operating Agreement. The moving <u>member</u> in *In re DB Capital Holdings* thus had the right to enforce the bankruptcy waiver provision, whereas, here, LBUBS is not a member of Debtor, and the Operating Agreement specifically prohibited LBUBS from enforcing any provision therein. The members of the debtor in *In re DB Capital Holdings* were independent persons, entities, or businesses that negotiated their own operating agreement. Here, LBUBS prepared and instructed Debtor's Restructuring Counsel as to all of the Requirements necessary in the Restructured Entities' governing documents, and the manner in which those provisions would be laid out in the Operating Agreement.

*In re DB Capital Holdings* is further distinguishable on a factual basis, because: (i) there are no provisions in the Operating Agreement requiring Mr. Jung to conduct and operate Debtor's business as presently conducted; nor (ii) any provisions requiring removal of the manager upon dissolution or bankruptcy. And, additionally, the Tenth Circuit Bankruptcy Appellate Panel failed to analyze numerous other defenses to the motion to dismiss that were not raised by the debtor, Debtor asserts herein. *See*, *infra*. Thus, these key facts which supported the holding in *In re DB Capital Holdings* are absent here.

*In re DB Capital Holdings* also has no precedential value. It is an unpublished case in direct conflict the Ninth Circuit precedent. It is worth noting, that as of the filing of this Opposition, no other court, in any jurisdiction, has followed *In re DB Capital Holdings* in upholding a bankruptcy prohibition provision in any contract or operating agreement. This lack of support by any other court demonstrates the unpersuasiveness of the holding.

Separately, the reasoning in *In re DB Capital Holdings* is unpersuasive. The Tenth Circuit Bankruptcy Appellate Panel provided no justification for imposing the ultimatum that the waiver of the debtor's right to file for bankruptcy would be upheld unless the debtor located a case striking such an LLC operating agreement provision. Relying on the absence of case law to uphold a provision held unenforceable in every other case is unsupported by law itself. The legal

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

DEBTOR'S OPPOSITION TO CREDITOR LBUBS 2005-C2 MIRA MESA LIMITED PARTNERSHIP'S
MOTION FOR ORDER DISMISSING CHAPTER 11 CASE

maxim "where the law is uncertain, there is no law,"[4] applies here.  Just because no case law is directly citable does not mean that the operating agreement was therefore enforceable.  Likewise, the holding in *In re DB Capital Holdings* is now the only case enforcing a pre-petition bankruptcy waiver.

### 3.    Additional Limitations Support Rejecting *In re DB Capital Holdings*

In addition to the distinguishing facts, lack of precedential value, unsupported reasoning, and unpublished opinion of *In re DB Capital Holdings*, other facts and argument exist that support the conclusion that the Material Action Provision is against public policy, including: LBUBS' lack of standing to bring the motion for dismissal in the first place; and the conflict between Mr. Jung's fiduciary duties owed to Debtor and the Members, as pitted against Debtor's duty to pay the Loan.

### a.    LBUBS Has No Standing to Bring the Motion to Dismiss

Although 11 U.S.C. § 1112(b)(2) allows any "party in interest" to petition a court to dismiss a chapter 11 case "for cause," courts have held that this does not include a non-member attempting to enforce a provision in an operating agreement that expressly prohibits such enforcement.  Nor does a "party in interest" necessarily include creditors of the chapter 11 estate. There are two lines of cases on this issue.  The first, and more persuasive line of authority, denies creditors standing because they have no authority to govern or manage the affairs of an entity. Even where a corporation's directors exceeded their authority conferred on them by the corporation's bylaws, creditors cannot challenge the "adjudication" of the bankruptcy because the issue is "purely one of the internal management of the corporation."  *Royal Indemnity Co. American Bond & Mortgage Co.*, 289 U.S. 165, 171 (1933), *unaffected by Price v. Gurney*, 324 U.S. 100 (1945) *as stated in In re Southwest Equipment Rental*, 152 B.R. 207 (Bankr. E.D. Tenn. 1992).  As such,

> Creditors have no standing to plead statutory requirements not intended for their protection.  If the stockholders' rights had been infringed, and they chose to waive them, a creditor could not assert them in opposing an adjudication.

*Royal Indemnity Co.*, *supra*, 289 U.S. at p. 171.

---

[4] "Ubi jus incertum, ibi jus nullum."  BLACK'S LAW DICTIONARY 1761 (Eighth ed. 2004).

DEBTOR'S OPPOSITION TO CREDITOR LBUBS 2005-C2 MIRA MESA LIMITED PARTNERSHIP'S
MOTION FOR ORDER DISMISSING CHAPTER 11 CASE

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

A "creditor does not move for dismissal of a bankruptcy case out of concern for the debtor or other creditors…. They are not trying to protect the rights of shareholders or other creditors. They don't care." *In re Southwest Equipment Rental*, *supra*, 152 B.R. at 209-210 (denying standing to creditors seeking dismissal to protect against potentially preferential transfers they received); *accord In re Sterling Mining Co.*, Case No. 09-20178, 2009 WL 2475302 (Bankr. D. Idaho, Aug. 11, 2009). **This is exactly the scenario here - a creditor is looking out for its own interests which will destroy all of the Members' equity and the unsecured creditors' claims.**

Other bankruptcy courts outside of the Ninth Circuit have held otherwise, allowing a creditor to bring a motion to dismiss based on a lack of authority in the entity's governing documents. *See, e.g., In re Orchard at Hansen Park, LLC*, 347 B.R. 822 (N.D. Tex. 2006); *In re Gucci*, 174 B.R. 401, 412, (Bankr. S.D. N.Y. 1994) (standing depends on creditor's stake in case); *In re Giggles Restaurant, Inc.*, 103 B.R. 549, 555-56 (Bankr. D. N.J. 1989).

*In re Sterling Mining Co.*, *supra*, is the only Ninth Circuit bankruptcy court to express an opinion on this issue and held that a lack of authorization by an entity's governing documents could not be enforced by a creditor. *Id.*, at *14. *In re Sterling Mining Co.*'s holding that creditors have no standing to enforce an LLC operating agreement is not only persuasive due to the fact that no other Ninth Circuit cases have held otherwise, but also because the Operating Agreement prohibits enforcement by a creditor. Section 24 of the Operating Agreement provides:

> None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or any creditor of the Member.

Thus, LBUBS's lack of standing under both *In re Sterling Mining* and the Operating Agreement compels denying the Motion to Dismiss.

/ / /

### b.   Failure to File the Petition Could Have Resulted in Breaches of Fiduciary Duty

Section 10(g) of the Hotels Agreement states:

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

> Except to the extent otherwise provided herein, each Manager and Officer shall have a fiduciary duty of loyalty and care similar to that of directors and officers of business corporations under the General Corporation Law of the State of Delaware.

Delaware corporate public policy demands that directors comply with a duty of undivided loyalty to the corporation, requiring a director not only affirmatively to protect the interests of the corporation committed to his charge, but also to refrain from doing anything that would work injury to the corporation, or to deprive it of profit or advantage, or to enable it to make in the reasonable and lawful exercise of its powers. *Guth v. Loft, Inc.*, 23 Del. Ch. 255 (1939), *aff'd*, 25 Del. Ch. 363 (1941).  Under Delaware corporate law, courts will not upset the decisions of either director or stockholders as to questions of policy and business management. *Mercantile Trading Co. v. Rosenbaum Grain Corp.*, 17 Del. Ch. 563 (1931); Del. Corp. Law, § 141(e).

The manager of Debtor had an affirmative fiduciary duty to act in the best interests of Debtor similarly to the duty imposed on a corporate director.  Debtor faced a no-win decision: either allow the Hotels to be foreclosed, and risk losing Debtor's main assets - the Franchise Agreements and the Hotels; or file bankruptcy and prevent the imminent foreclosure sale, reorganize its debts, retain the Hotels, and remain in compliance with the Franchise Agreements. There is no evidence of bad faith, disloyalty, or lack of adequate care by the decision to file for chapter 11.  The Material Action Provision prohibiting bankruptcy is thus additionally against public policy because Mr. Jung's adherence to it would have caused Debtor's manager to breach his duty of care (allow loss of main assets to foreclosure) and loyalty (allowing secured creditor's rights to trump those of Members).

## VI.   THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE DEBTOR FILED FOR CHAPTER 11 PROTECTION IN GOOD FAITH

LBUBS argues that Debtor filed its chapter 11 petition in bad faith.  Motion to Dismiss, 9:10-10:15.  LBUBS alleges bad faith because Debtor failed to make payments on the Loan, used the Hotels as security for another loan, and to prevent a foreclosure sale.  These facts fail to establish the bad faith of Debtor.  **To the contrary, these facts, among others analyzed below, indicate a Debtor concerned with the preservation of the Members' original $12 million in equity and retaining Debtor's most significant assets to permit an effective reorganization**

DEBTOR'S OPPOSITION TO CREDITOR LBUBS 2005-C2 MIRA MESA LIMITED PARTNERSHIP'S
MOTION FOR ORDER DISMISSING CHAPTER 11 CASE

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

1  **in satisfaction of the unsecured claims.**

2        The determination of whether a chapter 11 case was filed in good faith "depends on an

3  amalgam of factors and not upon a specific fact."  *In re Marsch*, 36 F.3d 825, 828 (9th Cir.

4  1994), quoting *In re Arnold*, 806 F.2d 937, 939 (9th Cir.1986).  The "courts may consider any

5  factors which evidence 'an intent to abuse the judicial process and the purposes of the

6  reorganization provisions.'"  *Id*., quoting *In re Albany Partners, Ltd*., 749 F.2d 670, 674 (11th

7  Cir.1984).  The ultimate determination of whether a chapter 11 case was filed in good faith is

8  "based on the totality of the circumstances."  *In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1074 (9th

9  Cir. 2002).  A debtor need not be insolvent before filing a bankruptcy petition so long as it is

10  experiencing "some type of financial distress."  *In re Capitol Food Corp of Fields Corner*, 490

11  F.3d 21, 25 (1st Cir. 2007).  Similarly, a chapter 11 filing is in good faith where it was "brought

12  on by actual financial distress and not an intent to unreasonably evade creditors."  *In re*

13  *Marshall*, 403 B.R. 668, 692 (C.D. Cal. 2009).  A petition filed for the purpose of preventing a

14  foreclosure is not filed in bad faith so long as there is a legitimate purpose to reorganize.  *In re*

15  *Chisum*, 847 F.2d 597, 600 (9th Cir. 1988).

16        LBUBS first argues that Debtor filed this Case in bad faith because it stopped making

17  payments on the Loan, "Despite admittedly having the funds to continue making the contractual

18  payments, and began diverting the funds to other endeavors, namely renovating the Hotel

19  Properties."  Motion to Dismiss, 10:2-4.  LBUBS' use of the word "diverting" is misleading.

20  Debtor was investing in the Hotels as required by the Franchise Agreements, **which improved**

21  **the value of LBUBS' collateral that secured the Loan.**  Thus, by complying with the Property

22  Improvement Plan called for in the Franchise Agreements, Debtor was benefitting LBUBS, who

23  is now oversecured by approximately $5 million.  Furthermore, if Debtor made the payments on

24  the Loan, in lieu of the renovations, Debtor would have breached the Franchise Agreements, and

25  correspondingly the Loan, allowing LBUBS to complain either way.  Finally, **LBUBS**

26  **consented to Debtor's renovation expenditures in the Renovation Reserve Agreement**.[5]

27  Jung Declaration, and Ex. B thereto.  The Renovation Reserve Agreement undermines LBUBS'

**Gordon & Rees LLP**
**101 West Broadway, Suite 2000**
**San Diego, CA  92101**

28

[5]  Significantly, the Renovation Reserve Agreement was not submitted with the Motion to Dismiss.

- 19 -

DEBTOR'S OPPOSITION TO CREDITOR LBUBS 2005-C2 MIRA MESA LIMITED PARTNERSHIP'S
MOTION FOR ORDER DISMISSING CHAPTER 11 CASE

1   assertion that Debtor diverted any funds.  Rather, it reveals LBUBS' consent to the renovations,

2   and the sizeable capital outlays that it would require.

3       Regarding Debtor's second loan, it was in financial distress due to the capital

4   expenditures on the renovations.  Without taking out another loan, Debtor would not have been

5   able to comply with the Property Improvement Plan and subsequently breached the Franchise

6   Agreements.  The second loan in no way impairs LBUBS's security since they are in a first

7   position on the Debtor's assets.

8       Finally, the mere fact that a foreclosure sale was pending when Debtor filed its petition

9   for relief does not indicate bad faith *per se*.  *In re Chisum*, *supra*, 847 F.2d at 600.

10      The totality of the circumstances presents a Debtor under financial distress with a viable

11  ability to reorganize.  Debtor's exercise of its right to file chapter 11 is squarely within the

12  anticipation and spirit of the Bankruptcy Code.  Debtor sought to maintain the original $12

13  million of Members' equity, complete the renovation in accordance with the Renovation Reserve

14  Agreement to which LBUBS expressly agreed, and prevent a foreclosure of the Hotels from

15  wiping out all claims of the unsecured creditors.  **LBUBS claims bad faith as a pretence to**

16  **generate a $5 million windfall to the detriment of the unsecured creditors and the**

17  **Members.**

18      Debtor was unable to meet all of its obligations as credit, the economy, and the local real

19  estate market struggled.  It attempted to refinance the terms of the Loan with LBUBS, who

20  refused Debtor any breathing room.  With no further options, Debtor availed itself of the

21  protections of chapter 11 to complete the renovations unharassed by LBUBS and its other

22  creditors.  Debtor filed in good faith and this Court should deny the Motion to Dismiss.

23  **VII.   <u>CONCLUSION</u>**

24      Debtor filed chapter 11 to protect its Members, its unsecured creditors, and to preserve

25  the Hotels and the franchise Agreement.  It filed for bankruptcy despite the Material Action

26  Provision, of which the manager had now knowledge.  Bankruptcy waivers have been

27  historically unenforceable pursuant to public policy abhors restrictions on the ability to file for

28  bankruptcy.  While one recent unpublished, non-Ninth Circuit case held that such provisions are

**Gordon & Rees LLP**
**101 West Broadway, Suite 2000**
**San Diego, CA  92101**

DEBTOR'S OPPOSITION TO CREDITOR LBUBS 2005-C2 MIRA MESA LIMITED PARTNERSHIP'S
MOTION FOR ORDER DISMISSING CHAPTER 11 CASE

1    enforceable, this distinguishable opinion failed to analyze many potentially viable defenses to a

2    secured creditor's motion to dismiss (e.g., standing, coercion, and conflicts with underlying

3    fiduciary duties).  Moreover, LBUBS is oversecured by millions of dollars.  The facts LBUBS

4    references in support of its allegations that Debtor filed this Case in bad faith actually benefitted

5    LBUBS by increasing the value of the collateral, and allowing Debtor to remain in compliance

6    with the Franchise Agreements.  As such, the Motion to Dismiss should be denied.

7

8    Dated: July 28, 2011                         GORDON & REES LLP

9                                                 By:    /s/Daniel C. Silva

10                                                        William M. Rathbone
                                                         Daniel C. Silva
11                                                       [Proposed] Attorneys for Debtor
                                                         JCK HOTELS, LLC,
12                                                       a Delaware limited liability company

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA  92101

DEBTOR'S OPPOSITION TO CREDITOR LBUBS 2005-C2 MIRA MESA LIMITED PARTNERSHIP'S
MOTION FOR ORDER DISMISSING CHAPTER 11 CASE