**K&L GATES LLP**
Sue J. Hodges (SBN 137808)
3580 Carmel Road, Suite 200
San Diego, California 92130
Telephone:    858.509.7433
Facsimile:    858.509.7459
Email:    sue.hodges@klgates.com

Attorneys for Secured Creditor
LBUBS 2005-C2 MIRA MESA LIMITED
PARTNERSHIP

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>JCK HOTELS, LLC, formerly known as Mira Mesa Hotels, LLC,<br><br>            Debtor. | Case No. 11-09428-LA11<br><br>**LBUBS 2005-C2 MIRA MESA LIMITED PARTNERSHIP'S REPLY TO (1) DEBTOR'S OPPOSITION TO MOTION FOR ORDER DISMISSING CHAPTER 11 BANKRUPTCY CASE OF JCK HOTELS, LLC, FORMERLY KNOWN AS MIRA MESA HOTELS, AND (2) COMMITTEE'S OPPOSITION TO MOTION FOR DISMISSING CHAPTER 11 BANKRUPTCY CASE AND JOINDER TO DEBTOR'S OPPOSITION TO MOTION TO DISMISS**<br><br>Date:        September 15, 2011<br>Time:       2:00 p.m.<br>Dept:       2, Room 118<br>Judge:     Hon. Louise DeCarl Adler |

Secured creditor LBUBS 2005-C2 Mira Mesa Limited Partnership ("Secured Creditor") hereby respectfully submits the following Reply in response to Debtor's Opposition to Creditor LBUBS 2005-C2 Mira Mesa Limited Partnership's Motion for Oder Dismissing Chapter 11 Case and the Official Committee of Unsecured Creditors' (the "Committee") Opposition to Creditor LBUBS 2005-C2 Mira Mesa Limited Partnership's Motion for Oder Dismissing Chapter 11 Case and Joinder to Debtor's Opposition to Motion to Dismiss (collectively "Oppositions") to Secured Creditor's Motion for Order Dismissing the Bankruptcy Case of JCK Hotels, LLC, formerly known as Mira Mesa Hotels, LLC ("Debtor") pursuant to 11 U.S.C. § 1112(b) ("Motion").

## I. Chapter 11 Case Was Filed Without the Required Authority.

Debtor and Committee argue that Secured Creditor is a non-member and thus does not have standing to enforce the Operating Agreement. Debtor's Opp. 10:7-26. What Debtor misconstrues, however, is that Secured Creditor is not attempting to enforce the Operating Agreement but is instead asking the Court to dismiss the bankruptcy petition on jurisdictional grounds because the Manager lacks the proper authority to file the petition.

As thoroughly set forth in the Motion, a bankruptcy proceeding can only be initiated by someone with the requisite authority to do so. *In re Real Homes, LLC,* 352 B.R. 221, 225 (Bankr. D. Ohio 2005) ("It is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is improper and must be dismissed."); *see also Hager v. Gibson*, 108 F.3d 35, 38-39; *In re Gen-Air Plumbing & Remodeling, Inc.,* 208 B.R. 426 (Bankr. N.D. Ill. 1997); *Price v. Gurney*, 324 U.S. 100, 106 (1945). Moreover, a secured creditor's right to file a motion to dismiss a bankruptcy petition is well documented. *In re Orchard*, 347 B.R. 822, 825 (Bankr. N.D. Tex. 2006); *In re Abijoe Realty Corp.*, 943 f.2d 121, 124 (1st Cir. 1991); *In re Consol. Auto Recyclers, Inc.*, 123 B.R. 130, 137 (Bankr. D. Me. 1991) (upholding creditor's right to file motion to dismiss even though dismissal benefitted creditor); *In re E.S. Bankest*, 321 B.R. 590, 594 (Bankr. S.D. Fla. 2005) (finding a party in interest to include "all persons whose pecuniary interests are directly affected by the bankruptcy proceedings.").

1    Here, Secured Creditor has filed its motion to dismiss because Debtor's Manager did not
2 have the proper authority to file bankruptcy.  Secured Creditor's Motion clearly explains that the
3 petition is an unauthorized filing that fails to trigger bankruptcy court jurisdiction.  *Price v. Gurney*,
4 324 U.S. at 106 (finding that the bankruptcy court did not have jurisdiction to hear a petition when
5 the petition was filed without proper authority).   Thus, the petition must be dismissed for lack of
6 jurisdiction.

**II.    Debtor's Right to Bankruptcy Is Not Absolute.**

In the Oppositions, Debtor and the Committee argue that Debtor has a fundamental right to file bankruptcy and that it has not and cannot waive this right.  While a debtor's statutory right to file a bankruptcy petition is undisputed, courts for years have concluded that this right is not absolute and can be limited or curtailed in certain circumstances.  *United States v. Royal Business Funds Corp.*, 724 F.2d 12 (2nd Cir. 1983) (holding that a stipulation between parties can bar a debtor from commencing bankruptcy proceedings); *SEC v. Lincoln Thrift Association*, 577 F.2d 600, 609 (9th Cir. 1978) (affirming the district court's decision to deny transfer of a liquidation to bankruptcy court); *SEC v. Bartlett*, 422 F.2d 475, 477-79 (8th Cir. 1970); *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919, 925-26 (5th Cir. 1977) (reiterating that the right to file a bankruptcy petition is not protected).  When a debtor company voluntarily limits its own right to file bankruptcy in its LLC operating agreement, it is exercising its freedom to contract and to negotiate particular *quid pro quo* provisions amongst its members.  *Watson v. Citi Corp.*, 2008 WL 4186317 *6 (S.D. Ohio Sept. 5, 2008) (explaining that a debtor's agreement to not file bankruptcy in certain circumstances is sufficient consideration for an accord and satisfaction); *Debtor's Waiver of, or Refraining from Exercising, Right to Resort to Bankruptcy, or His Insolvency, as Consideration for Release of All or Part of Liability*, 108 A.L.R. 656 (1937); *In re Loucheschi*, 2011 WL 3319891 (Bankr. D. Mass. Aug. 2, 2011) (noting that an involuntary restraint on a debtor's right to file bankruptcy should be subject to greater scrutiny than a debtor's voluntary waiver).

Here, Debtor and the Committee contend that the Court should find "unenforceable" the limitation Debtor placed on its own ability to file bankruptcy because it is against public policy. They claim that Ninth Circuit precedent is in agreement but of the cases cited, only one is actually a

1  Ninth Circuit case – *Bank of China v. Huang (In re Huang)*, 275 F.3d 1173 (9th Cir. 2002) – and all
2  involve a debtor's agreement *with a third party* to waive bankruptcy rights.  Neither Debtor nor the
3  Committee has found a single case supporting their theory that an agreement amongst members of
4  an LLC to not file bankruptcy under certain conditions is void as against public policy.  Indeed, one
5  of the only cases on point is the unpublished Tenth Circuit case Secured Creditor cited in its Motion.
6  *DB Capital Holdings, LLC  v. Aspen HH Ventures, LLC*, 2010 WL 4925811 (10th Cir. B.A.P.
7  (Colo.)).  In *DB Capital*, both the district court and the appellate court agreed that while an
8  agreement between a debtor and creditor that requires the debtor to provide a blanket waiver of its
9  right to file bankruptcy may be against public policy, members of an LLC can agree amongst
10 themselves to limit certain actions a member of manager can take under certain conditions, including
11 filing bankruptcy.  *Id.* at *3.  This Court should adopt the sound reasoning of the Tenth Circuit and
12 dismiss this case.

### III.     **Debtor's Argument that the Operating Agreement Is Confusing or Difficult for the Korean-Speaking Members to Comprehend Is Simply a Red Herring.**

Debtor complains that the Members including the Manager had very limited English comprehension and could not understand the "thousands of pages" of documents they were asked to sign. Debtor's Opp. 3:20-26.  This argument, however, is a baseless red herring.  The failure to read or comprehend a document before signing it does not enable one to ignore the obligations and limitations imposed by that document. *Novitsky v. American Consulting Engineers, LLC.*, 196 F.3d 699 (7th Cir. 1999); *Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2nd Cir. 2002) (holding that a party who voluntarily executes a document without reading it is bound by its terms). As the Debtor admits in its Opposition, the Members obtained legal counsel at the urging of their broker who understood the complexity involved in negotiating a large, multimillion-dollar loan. Debtor's Opp. 3:12-15.  Indeed, the Members hired counsel specifically to help form the new LLCs and to prepare the operating agreements for the new LLCs. Id.  Thus, it seems far fetched to claim that the Members failed to comprehend the terms of their own company's Operating Agreement and that they were forced to blindly signed on the dotted line when they were in fact represented by counsel who was ethically obligated to fully inform the Members and act in their best interest.

3                                                        Printed on recycled paper
REPLY TO OPPOSITIONS TO MOTION FOR ORDER DISMISSING BANKRUPTCY CASE

1    Debtor's arguments that the relevant provisions of the Operating Agreement are somehow vague, misleading or hidden are disingenuous. First, the Operating Agreement is a document that sets forth how the company plans to operate and conduct its business.  It defines the purpose of the company, its powers and how it will be managed.  Apparently, the Members worked hand-in-hand with their attorney to form the new LLCs and prepare the operating agreements for the LLCs. Debtor's Opp. 3:12-19, 26-28; 4:3-5.  But now, years after executing the Operating Agreement and complying with its provisions, Debtor claims that the terms of the Operating Agreement are "unconscionable," that its Members had no idea what they were signing and that they never had the opportunity to negotiate or craft the terms of the Operating Agreement, the most important document governing Debtor's operating structure and function. Debtor's Opp. 3:2-3, 26-28; 4:2-6.  Again, the Members engaged counsel to protect their rights and advise them in these matters and now, years later, have no grounds to complain that such counsel apparently did not do so.

Second, Section 9(i) of the Operating Agreement clearly sets forth the limitations on LLC activities, including a limitation on when a Member or Manager can take "Material Action."  This provision is clearly set forth in its own paragraph on page 6 of the Operating Agreement.  It is not in fine print, not buried in the middle of a long paragraph, and not randomly placed at the back of the Operating Agreement.  It is plainly listed as the fourth provision under the underlined heading "Limitations on the Company's Activities" and reads as follows:

> Notwithstanding any other provision of this Agreement and any provision of law that otherwise so empowers the Company, the Member or the Manager, so long as an SPE Condition exists, to the maximum extent permitted by law neither the Member nor any Manager shall be authorized or empowered, nor shall they permit the Company, to take any Material Action.

Operating Agreement Section 9(i)(iv).

To further avoid any confusion, the Operating Agreement specifically defines both "Material Action" and "SPE Condition" in the "Definitions" portion of the document, the most obvious and easiest place to reference.  Contract drafters often put the Definitions section of an agreement either at the beginning or the end of the agreement for easy reference.  Whether it is at the beginning or end of an agreement is purely a stylistic choice and does not indicate an attempt to conceal defined terms. If the Members did not understand what either term meant, they could have easily asked their

1 attorney or turned to the "Definitions" portion of the Operating Agreement and found the terms fully
2 defined.  If they did not appreciate having the defined terms at the end of their Operating Agreement,
3 then the Members simply could have asked their attorney to place it somewhere else in the
4 document.

5 Debtor's misplaced blame on how its Operating Agreement was structured is simply
6 Debtor's attempt to muddle the facts and divert the Court's attention from the main issue at hand –
7 *Did the Manager have the authority to file the bankruptcy petition?*  And as explained in detail in
8 the Motion to Dismiss, the Operating Agreement clearly prohibits the Manager from filing a
9 bankruptcy petition.  Because the petition was filed without proper authority, the petition should be
10 dismissed.

**IV.    Dismissal Is Also Appropriate Because Debtor Filed Its Chapter 11 Petition in Bad Faith.**

Debtor and the Committee argue that Debtor was under financial distress and thus had a good faith basis for filing the petition.  The standard for determining whether a petition has been filed in good faith involves evaluating the totality of the circumstances. *In re Eisen*, 14 F3d 469, (9th Cir. 1994) ("To determine bad faith a bankruptcy judge must review the totality of the circumstances.").  Here, Debtor has file this petition, on the eve of a pending foreclosure sale solely in order to stay the pending district court action and delay Secured Creditor's attempts to collect on the millions of dollars outstanding on the defaulted loan.  After refusing to pay on the loan for almost two years, Debtor only now seeks bankruptcy relief to prevent Secured Creditor from recovering the substantial amount of money it is owed.  As explained in detail in the Motion, Debtor's last minute attempt stop foreclosure proceedings, its diversion of Secured Creditor's collateral to finance renovations and to pay unsecured creditors[1], and its taking of a new loan in contravention of its obligations under the Loan Documents constitute bad faith and sufficient grounds for dismissal.

---

[1] The Oppositions assert that Secured Creditor agreed to diversion of its collateral in consenting to the Renovation Agreement.  This is ridiculous.  Clearly, Secured Creditor has the right to expect Debtor to comply with all of its contractual commitments.  Absent such compliance, Secured Creditor should be entitle to enforce its remedies.

**V.     Conclusion.**

For the reasons set forth above and in the Motion, Secured Creditor requests Debtor's petition be dismissed.

Respectfully submitted,

K&L GATES LLP

Dated: August 29, 2011          By:   /s/ *Sue J. Hodges*
                                         Sue J. Hodges

Attorneys for Secured Creditor
LBUBS 2005-C2 MIRA MESA LIMITED PARTNERSHIP